UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
ENTERED
AUG - 3 2000
MICHAEL N. MILBY, CLERK OF COURT

| | | |
|---|---|---|
| **EUGENE E. SHANKS, SR. d/b/a FLITELINE MAINTENANCE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-94-1906** |
| | § | |
| **ALLIEDSIGNAL, INC. d/b/a GARRETT ENGINE DIVISION, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

**<u>ORDER</u>**

Pending before the Court is Defendants' Motion for Summary Judgment (Docket #75). After considering the motion, the response, and the applicable law, the Court concludes that the motion should be GRANTED.

**BACKGROUND**

On May 14, 1992, an agriculture aircraft crashed in rural Louisiana, killing the pilot, Billy Kenney. The aircraft (the "Kenney airplane") had been manufactured by Defendant Garrett Engine Division of AlliedSignal, Inc. ("Allied")[1] and maintained by Plaintiff Eugene E. Shanks, Sr. ("Shanks"), doing business as Fliteline Maintenance. During 1992 and 1993, the National Transportation Safety Board ("NTSB") investigated the accident with the participation and assistance of Allied and issued a probable cause statement concluding that the crash was caused by improper maintenance of the aircraft.

---

[1] References to "Allied" herein refer to Defendants collectively.

94

ClibPDF - www.fastio.com

Thereafter, on May 24, 1993, Shanks was indicted by a federal grand jury on six counts of falsifying records and two counts of supplying false information that endangered the safety of an aircraft. The indictment included allegations arising from the crash of the Kenney airplane, but was not limited to Shanks' activities regarding that particular plane. On December 9, 1993, Shanks entered into a plea agreement with the government, pleading guilty to two counts of making false statements in records within the jurisdiction of the Federal Aviation Administration ("FAA"). The government dismissed the remaining counts of the indictment including the charge that Shanks had made false statements in connection with the Kenney airplane that resulted in its crash.

On June 2, 1993, the FAA issued two emergency revocation orders, revoking Shanks' airman mechanic certificate and Flightline's air agency certificate for falsifying records and improperly maintaining aircraft. Shanks and Flightline appealed these orders and they eventually settled with the FAA; however, Shanks did not receive a new airman mechanic certificate.

In October of 1994, Shanks filed a petition for reconsideration with the NTSB asking the NTSB to revise its January 13, 1993 probable cause determination with respect to the cause of the Kenney airplane crash. On December 22, 1996, the NTSB revised its statement and found that the accident was caused by pilot error, not improper maintenance.

Shanks sued Allied and various Allied agents in state court for their participation in the NTSB investigation. That action was removed to this court on June 6, 1994. Originally, Shanks asserted causes of action against the defendants for defamation, tortious interference with business relations, negligence, unfair trade practices, intentional and negligent infliction of emotional distress, fraud, and civil conspiracy. Shanks also claimed that he was defamed by



ClibPDF - www.fastio.com

Defendant Sandy Meour, who allegedly announced on February 2, 1994 that an FAA Airworthiness Directive was imminent which could require a conformity check on any engine ever worked on by Shanks.

Allied moved for summary judgment on Shanks' causes of action arguing that they fail as a matter of law because the communications in question were absolutely privileged. Allied and Meour argued that Shanks' claim against Meour failed as a matter of law because it was true.

On August 1, 1997, this Court denied Allied's motion for summary judgment. The Court decided that the NTSB investigation was not a quasi-judicial proceeding under Texas law and as a result Allied could not assert absolute immunity as a defense. That ruling was appealed to the Fifth Circuit, and in 1999, the Fifth Circuit issued an opinion vacating this Court's denial of summary judgment.

The Fifth Circuit, relying upon *Reagan v. Guardian Life Ins.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942), determined that the NTSB investigation was a quasi-judicial proceeding. Accordingly, Allied is absolutely immune from suit for statements made during the NTSB investigation. The Fifth Circuit left open two questions now relevant: (1) whether immunity barred all causes of action arising from communications during a quasi-judicial proceeding, or simply defamation; and (2) whether the conduct complained of by Shanks exceeded the scope of the NTSB investigation. The Fifth Circuit then remanded the case back to this Court.

Since the case was remanded, Shanks has amended his complaint. He now more specifically alleges that he suffered harm as the result of Allied's negligence and he provides eighteen different examples of allegedly actionable conduct. Included in his negligence claim, are allegations that Allied did not perform appropriate tests with respect to its involvement in the



ClibPDF - www.fastio.com

Kenney airplane investigation, and damaged evidence that may have exonerated him. As additional bases for his negligence claim, Shanks contends that Allied did not inform the NTSB, the Department of Transportation Inspector General's Office ("DOT/OIG"), the United States Attorney's Office, the FAA, or the public, including ABC News, about possible exculpatory information that would have tended to show that Shanks' conduct was not a probable cause of the Kenney airplane crash. He also retains his defamation claim against Meour for statements made during a 1994 trade show.

In response to Shanks' amended complaint, Allied has filed a second partial motion for summary judgment, arguing that it is entitled to judgment as a matter of law on Shanks' negligence claim. First, Allied contends that Shanks' has dubbed his claim a "negligence" claim but in essence it is a claim for malicious prosecution, for which he cannot meet the elements as a matter of law. Second, Allied maintains that it fails as matter of law as a negligence claim because Allied is either entitled to absolute immunity or the requisite elements of a negligence claim do not exist. Shanks, of course, disputes these contentions.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Disputes about material facts are "genuine," as contemplated by the federal rule, if the evidence is such that a rational trier of fact could return a verdict for the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).



ClibPDF - www.fastio.com

"For any matter on which the non-movant would bear the burden of proof at trial..., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995). In satisfying this burden, the non-movant "may not rest upon the mere allegations or denials of the [non-movant's] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)*; see also Celotex*, 477 U.S. at 324-27.

## ABSOLUTE IMMUNITY

"Texas law grants absolute immunity from suit for statements made during [NTSB] investigations." *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 995 (5th Cir. 1999). Since the Fifth Circuit ruling, Shanks has amended his complaint to assert a more specific claim for negligence; however, if his negligence claim is merely a restatement of his defamation claim, Allied is nonetheless entitled to immunity. *See Bird v. W.C.W.*, 868 S.W.2d 767, 771 (Tex. 1994); *see also Shanks*, 169 F.3d at 995, n.8 (addressing the Texas Supreme Court's holding in *Bird* and its unwillingness to allow a plaintiff "to circumvent the policy behind absolute immunity merely by pleading creatively.").

The Texas Supreme Court has held that where a negligence claim is "virtually indistinguishable" from a defamation claim, and the damages sought "are basically defamation damages," the privilege afforded defamatory statements made during the course of a judicial or quasi-judicial proceeding applies. *Bird*, 868 S.W.2d at 771-72. In *Bird*, the plaintiff sued a psychiatrist for negligently concluding that the plaintiff was abusing his child. The psychiatrist submitted this conclusion to the court during custody proceedings in the form of an affidavit.



ClibPDF - www.fastio.com

The Court held that the plaintiff did not have a negligence cause of action against the psychiatrist for his misdiagnosis of child abuse, and the affidavit was absolutely privileged. *See Bird*, 868 S.W.2d at 772. In a case distinguished by the *Bird* Court, *James v. Brown*, 637 S.W.2d 914 (Tex. 1982), the Court held that absolute immunity did not preclude a plaintiff, who had been involuntarily committed to a hospital, from suing the doctors who diagnosed her as a danger to herself and others, for negligence, i.e., medical malpractice. *See James*, 637 S.W.2d at 917 ("While the doctors' communications to the court of their diagnoses of Mrs. James' mental condition, regardless of how negligently made, cannot serve as the basis for a defamation action, the diagnoses themselves may be actionable on other grounds.").

As discussed in footnote 8 of the *Shanks* opinion, lower Texas courts have struggled with the issue of extending immunity to other causes of action aside from defamation. *See Shanks*, 169 F.3d at n.8. After considering the case law, the Court concludes that the distinction between *Bird* and *James* lies in the availability of an independent basis for relief for the asserted cause of action. That is, where the plaintiff's cause of action, negligence in this case, exists independently of the privileged communications, the plaintiff is not precluded from asserting its claim by absolute immunity; however, where the plaintiff's claim arises from the privileged communications, that claim is barred. *See Laub v. Pesikoff*, 979 S.W.2d 686, 692 (Tex.App.–Houston [1st Dist.] 1998, *writ denied*); *Crain v. The Unauthorized Practice of Law Comm. of the Supreme Court of Texas*, 11 S.W.3d 328, 335 (Tex.App.–Houston [1st Dist.] 2000, *rule 53.7 motion filed*).

In *Bird*, the Court specifically held that "a mental health professional owes no professional duty of care to a third party to not negligently misdiagnose a condition of a patient."



ClibPDF - www.fastio.com

*Bird*, 868 S.W.2d at 772. Thus, in *Bird*, there was no negligence cause of action aside from the negligently made diagnosis communicated to the court by affidavit; the injuries suffered by the plaintiff were the result of the communication of allegedly false information to the court. In contrast, in *James*, the plaintiff was also the patient, who could incur injuries as a result of her doctor's misdiagnosis of her. A malpractice claim at issue in *James* could exist apart from the damages incurred as a result of the privileged communication. *See James*, 637 S.W.2d at 918 ("Mrs. James is not prevented from recovering from the doctors for negligent misdiagnosis-medical malpractice merely because their diagnoses were later communicated to a court in the due course of judicial proceedings.").

This Court concludes that the rule espoused in *Bird* applies here. Shanks contends that Allied was negligent in reaching its conclusion by failing to perform certain tests and by failing to inform the NTSB, the United States Attorney's Office, the FAA, the DOT/OIG, and the public, that the NTSB's initial probable cause determination was incorrect.[2] These failures or omissions on the part of Allied are only relevant in so far as they relate to the accuracy or veracity of Allied's August 11, 1992 report to the NTSB, the same report that Shanks claims caused the NTSB to make its erroneous probable cause determination with respect to the Kenney airplane crash. In other words, Shanks asserts that if Allied had preserved evidence, performed

---

[2] Shanks alleges that Allied was negligent when it failed to preserve evidence analyzed during the investigation, failed to conduct certain tests or reveal the results of those tests to the NTSB, failed to inform anyone at NTSB or the other governmental bodies that the probable cause determination was wrong, failed to file a petition for reconsideration with the NTSB to correct its erroneous probable cause determination, and failed to join Shanks in his petition for reconsideration with the NTSB. (Second Amended Complaint, ¶ 26.1-7, 26.11, 26.17-18). All of these allegations are relevant only because of their potential impact upon Allied's initial conclusion and communication to the NTSB that poor aircraft maintenance was the cause of the Kenney airplane crash. In essence, they all concern Allied's conduct in assisting the NTSB with its investigation.



ClibPDF - www.fastio.com

additional tests, or informed the NTSB of the results of certain tests, the NTSB would not have relied on the allegedly false Allied report of August 11, 1992. As a result, the NTSB would not have issued its unfavorable probable cause determination regarding Shanks, and Shanks would not have been prosecuted by the other governmental bodies.

The "essence" of Shanks' negligence claim "is that he suffered injury as a result of the communication of allegedly false statements made during a [quasi-judicial] proceeding." *Laub*, 979 S.W.2d at 692. Shanks' complaints of negligence in this regard merely demonstrate that Allied's August 11, 1992 report to the NTSB was incorrect, and its complaint is essentially a claim that Allied was negligent in issuing its report and in not correcting its error. Another indication that Shanks' negligence claim is merely a restatement of his defamation claim is that the damages sought by Shanks' include defamation-type damages such as loss of reputation and earnings, as well as damages for the legal costs of defending himself. *Cf. Bird*, 868 S.W.2d at 772 ("The communication ... is privileged ... where the ... damages are basically defamation damages.")

Shanks argues that absolute immunity does not attach to any dealings with the NTSB that occurred after August 11, 1992, the date of Allied's report to the NTSB presenting its findings regarding the Kenney airplane crash. Shanks, however, does not address the rule set forth in *Bird*, nor does he try to distinguish that case. Furthermore, the Court disagrees with Shanks' assertion that immunity does not cover any Allied statements or omissions occurring after August 11, 1992; the immunity extends to all statements made during the NTSB proceedings. Likewise, since motivation is irrelevant when absolute immunity applies, *see Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 767-68 (Tex. 1987), the privilege extends to a failure to



ClibPDF - www.fastio.com

correct such statements. For the reasons stated above, the allegedly negligent conduct during the investigation that led Allied to reach its conclusion and communicate the damaging conclusion to the NTSB is privileged, as is its alleged failure to correct its erroneous conclusion.

## MALICIOUS PROSECUTION

The Court believes an umbrella of immunity shields Allied from liability for its allegedly negligent conduct because the statements or omissions are only actionable to the extent they reflect upon Allied's initial communications with the NTSB; however, as an alternative basis for its holding, the Court concludes that Shanks' negligence claim fails as a matter of law because in actuality it is a claim for malicious prosecution, albeit an unsuccessful one. "When a communication of an alleged wrongful act is made to an official authorized to protect the public from such act, that communication is entitled to only a qualified privilege."[3] *Thomas v. Bracey*, 940 S.W.2d 340, 343 (Tex.App.–San Antonio 1997, *n.w.h.*).[4]

---

[3] In *Hurlbut*, 749 S.W.2d at 767-68, the Texas Supreme Court discussed the difference between an absolute and conditional privilege. An absolute privilege, which is essentially immunity from suit protecting the actor regardless of the actor's motivation, protects Allied's communications with the NTSB. *See Shanks*, 169 F.3d at 995. As already discussed, all of Shanks' bases for his negligence claim are covered by this absolute immunity because they are inextricably intertwined with Allied's erroneous communication to the NTSB. But were Allied's statements or failures to correct such statements not protected by an absolute privilege, they would nonetheless be protected by a conditional privilege. A conditional privilege, carved out to encourage the open exchange of information, applies depending upon the context in which the individual acts. *See Hurlbut*, 749 S.W.2d at 768. It is a privilege that applies unless the actor knows that his communication is false. *See id.*. Since a malicious prosecution case requires a showing of malice, statements made to law enforcement personnel regarding criminal behavior are in effect conditionally privileged. *See id.*

[4] In *Thomas*, the court recognized that while a statement to law enforcement personnel is only conditionally privileged, should that statement relate to a judicial proceeding for which there is an absolute privilege, the statement to the law enforcement personnel is absolutely privileged. Specifically, the court stated,

> Whether an alleged defamatory matter is related to a proposed or existing judicial proceeding is a question of law to be determined by the



ClibPDF - www.fastio.com

Shanks' negligence claim is merely a malicious prosecution claim in disguise. Shanks claims that he suffered damages because Allied negligently failed to discover and communicate exculpatory information to governmental authorities, a failure which eventually led to his prosecution. Shanks alleges that Allied's "negligent, intentional and reckless acts and omissions ... were a 'but for' or were a 'substantial factor in' proximately causing [his] damages." (Second Amended Complaint, ¶ 27). Allied contends that while Shanks labels this as negligence, "the gravamen of the complaint is that defendants improperly procured the criminal and civil prosecutions of Shanks and Fliteline Maintenance." (Motion for Summary Judgment, p. 9).

The Court agrees with Allied. The gist of Shanks complaint is that he was prosecuted criminally and civilly as a result of Allied's actions, or more appropriately, inaction.[5] Shanks

---

> court. All doubt should be resolved in favor of the communication's relation to the proceeding. In this case, the trial court determined that the publication of appellee's letter to Deputy Fisher related to a judicial proceeding and was, therefore, absolutely privileged. We agree.... [T]he fact that appellee's letter was published to a law enforcement official has no bearing upon the privilege under the facts of this case. Appellee sent the letter in connection with and in contemplation of judicial proceedings. Even statements aimed at parties not involved in the proceeding are absolutely privileged if they bear some relation to a judicial proceeding. As such, the communication was privileged.

*Thomas*, 940 S.W.2d at343-44 (citations omitted). The same situation exists in this case. Allied made statements to the NTSB that were absolutely privileged, although they were in error. It failed to correct its statements and inform law enforcement personnel that it was in error. As a result, Shanks was prosecuted and incurred damages. In essence, this is a malicious prosecution claim; however, the fact that it is a malicious prosecution claim does not alter the fact that the claim arises from the communications with the NTSB, communications that were absolutely privileged.

[5] The fact that Shanks' amended complaint alleges omissions as opposed to affirmative misrepresentations to the governmental bodies by Allied does not change the analysis; the omissions are only relevant in so far as they amount to a failure to correct a prior affirmative representation. *Cf. Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 290, 294 (Tex. 1994) (recognizing that a failure to make a full and fair disclosure to law enforcement could provide a basis for a malicious prosecution claim).

seeks damages arising from the criminal and civil proceedings against him, including attorney fees and legal costs incurred as a result of those proceedings. The letter from Shanks' criminal defense attorney, Stephen Morris, relied upon by Shanks in his response to summary judgment, sums up Shanks' theory of the case.

> The criminal investigation that resulted in the criminal indictment against Eugene E. Shanks, Sr. was initiated as a result of the erroneous NTSB Probable Cause Statement, the joint investigative effort of Garrett [Allied] personnel, agents of the Federal Aviation Agency and agents of the Department of Transportation Inspector General's Office. The United States Attorney's Office and the agents of the Department of Transportation Inspector General's Office initially relied upon the technical expertise of Garrett personnel in pursuing the Government's criminal investigation of Eugene E. Shanks Sr.... After attorneys representing the Government independently investigated the assertions alleged as the cause of the crash in the NTSB Probable Cause Statement, they concluded the information the Government relied on in seeking the Air Piracy count of the indictment against Mr. Shanks was erroneous.

(Plaintiff's Exhibit A, Letter of Stephen Morris to Plaintiff's Counsel dated June 29, 1997). Shanks tries to disguise his allegation as a negligence claim, but it is obvious that his real contention is that Allied's conduct during the investigation of the Kenney airplane crash and its conclusions eventually procured Shanks' prosecution.

The Texas courts have construed such negligence claims as malicious prosecution claims. *See Smith v. Sneed*, 938 S.W.2d 181, 183 (Tex.App.–Austin 1997, *no writ*); *ITT Consumer Financial Corp. v. Tovar*, 932 S.W.2d 147, 155-56 (Tex.App.–El Paso 1996, *writ denied*); *Wal-Mart Stores, Inc. v. Medina*, 814 S.W.2d 71, 74 (Tex.App.–Corpus Christi 1991, *writ denied*); *Armedariz v. Bill Sears Supermarket NO. 1*, 562 S.W.2d 529, 531 (Tex.App.–ElPaso 1978, *writ ref'd n.r.e.*); *see also Campbell v. City of San Antonio*, 43 F.3d 973, 981 (5th Cir. 1995); *Lewis v. Continental Airlines, Inc.*, 80 F.Supp.2d 686, 697 (S.D.Tex. 1999). In *Smith*, the court stated,



ClibPDF - www.fastio.com

"[w]here an individual is implicated in a crime, subsequently exonerated, and then brings a claim for damages caused by the disclosure of information to the police and the criminal prosecution, such a complaint is in essence a claim for malicious prosecution." *Smith*, 938 S.W.2d at 183. The court then went on to conclude, "[w]e therefore decline to hold that a duty exists outside the torts of malicious prosecution and defamation not to falsely accuse someone of criminal wrongdoing." *Smith*, 938 S.W.2d at 185; *see also Lewis*, 80 F.Supp.2d at 698.

Shanks argues that the policy rationale behind malicious prosecution is not present in this case. The Court disagrees. The elements of a malicious prosecution claim are strictly interpreted to preserve "the delicate balance between protecting against wrongful prosecution and encouraging reporting of criminal conduct." *Browning-Ferris Indus., Inc.*, 881 S.W.2d at 291. The courts require that the plaintiff prove a malicious intent in establishing its claim because a negligence standard of liability would not sufficiently protect those who report crimes; the strong public policy in favor of exposing criminal behavior necessitates that "a person wrongfully accused of a crime must bear a risk of being subjected to prosecution." *Smith*, 938 S.W.2d at 184.

The same interests are present in this case. Our society has an interest in safe aircraft, and invites private participants into the investigatory process to assist the government in determining the cause of accidents. Recognizing this interest, the Fifth Circuit has already concluded that absolute immunity attaches to Allied's communications with the NTSB during the investigation. It would defeat the purpose of absolute immunity should Allied nevertheless be liable for its allegedly negligent communications with the NTSB because some other governmental body chose to rely upon it in prosecuting Shanks.



ClibPDF - www.fastio.com

Having concluded that Shanks' negligence claim is merely a malicious prosecution claim in disguise, the Court must address whether the elements of malicious prosecution have been satisfied. To establish a claim for malicious prosecution, the plaintiff must prove: "(1) commencement of a criminal prosecution; (2) with malice; (3) without probable cause; (4) the prosecution ended in acquittal; and (5) damages." *Smith*, 938 S.W.2d at 183; *see also Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996) (discussing the elements of a claim for malicious prosecution of a civil proceeding, which are similar to the elements of a criminal malicious prosecution claim).

An essential element of a malicious prosecution claim is that the action terminate in the accused's favor; however, "[d]ismissal of a criminal prosecution brought about by the procurement or compromise of the person therein accused is not such an end of the prosecution as will warrant an action for damages for malicious prosecution." *Pete v. Metcalfe*, 8 F.3d 214, 219, n.9 (5th Cir. 1993) (holding that an end to the proceedings as a result of a plea of *nolo contendre* did not terminate in the accused's favor) (quoting *Ellis v. Sinton Savings Ass'n*, 455 S.W.2d 834, 842 (Tex.App.–Corpus Christi 1970, *writ ref'd nr.e.*)); *see James*, 637 S.W.2d at 919 (addressing a claim for malicious prosecution of a civil proceeding). That is, an end to the prosecution as a result of a plea bargain would not constitute a termination in Shanks' favor. *See Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994) ("Entering a pre-trial diversion agreement does not terminate the criminal action in favor of the criminal defendant for purposes of bringing a malicious prosecution claim."); *Ellis*, 455 S.W.2d at 842; *Mrkva v. Slovak*, 107 S.W.2d 923, 924 (Tex.App.–Waco 1937, *n.w.h*) (holding that a guilty plea is not a termination favorable to the accused for purposes of a malicious prosecution claim).



ClibPDF - www.fastio.com

In this case, Shanks pleaded guilty to two counts of the federal indictment, and the United States Attorney dismissed the other six counts. In the FAA proceeding, Shanks reached an agreement with the FAA after he appealed the decision to the NTSB. Pursuant to that agreement, Shanks retained his pilot's license, but his airman mechanic certificate was revoked. As discussed above, neither of these proceeding terminated in Shanks' favor. Accordingly, his negligence/malicious prosecution claim fails as a matter of law.

## CONCLUSION

The Court concludes that Shanks' negligence claim is in actuality a creative attempt to assert a claim for malicious prosecution. It is barred by absolute immunity because it addresses conduct or communications related to statements made during the NTSB investigation. To the extent Shanks' claim is not barred by absolute immunity, he fails as a matter of law to create an issue of fact with respect to all the requisite elements of such a claim. The only claim remaining for trial is Shanks' defamation claim against Sandy Meour.

It is so ORDERED. The clerk shall enter this order and provide a true copy to each party.

Signed this 3rd day of August, 2000.

John D. Rainey

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE



ClibPDF - www.fastio.com